FILED

2007 Mar-15  AM 10:44
U.S. DISTRICT COURT
N.D. OF ALABAMA



'07  MAR -9  PM 4: 36

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

WILLIAM JACKSON,                                      )
                                                     )
    Plaintiff.                                  )
                                                     )
v.                                                   )   **CIVIL ACTION NO.:**
                                                     )
UNITED STEEL, PAPER AND FORESTRY, RUBBER,            )      CV-07-JEO-0461-S
MANUFACTURING,  ENERGY, ALLIED                       )
INDUSTRIAL AND SERVICE WORKERS                       )
INTERNATIONAL UNION, AFL-CIO-CLC;                    )
DISTRICT 9 UNITED STEEL, PAPER AND FORESTRY,         )
FORESTRY, RUBBER, MANUFACTURING,  ENERGY             )
ALLIED INDUSTRIAL AND SERVICE WORKERS                )
INTERNATIONAL UNION, AFL-CIO-CLC;                    )
LOCAL UNION NO. 2122 OF UNITED STEEL,                )
PAPER AND FORESTRY, RUBBER,                          )
MANUFACTURING,  ENERGY, ALLIED                       )
INDUSTRIAL AND SERVICE WORKERS                       )
INTERNATIONAL UNION, AFL-CIO-CLC;                    )
DANNY PERRY, in his official and individual capacity; )
ROBERT ERWIN, in his official and individual capacity; )
WALTER EVANS, in his official and individual capacity; )
                                                     )
    Defendants.                                 )

## COMPLAINT

### INTRODUCTION

This is an action for declaratory and injunctive relief and damages to

redress the violation or deprivation of certain union rights of the plaintiff and

members of the class under Title IV of the Labor-Management Reporting and

Disclosure Act of 1959; 29 U.S.C. §§ 401 et seq. (hereafter referred to as LMRDA),

and §301 of the LMRA.  This is a class action for declaratory and injunctive relief

and damages to redress the violation of deprivation of certain civil rights of the

plaintiffs and members of the class under the First and Fourteenth Amendments of the United States Constitution.

## JURISDICTION

1. Jurisdiction of this action is conferred on the court by § 402(b) of the LMRDA (29 U.S.C. § 482(b)).

2. The jurisdiction of this Court is also conferred pursuant to 28 U.S.C. Section 1331, 1334(4), 2201 and 2202, 42 U.S.C. Section 2000 et. seq., the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000 et. seq., the Civil Rights Act of 1991 and 42 U.S.C. Section 1981 and 1983. The jurisdiction of this Court is invoked to secure protection of and redress of deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, providing for injunctive and other relief against racial discrimination. This action seeks both legal and equitable relief.

3. The court has pendant jurisdiction over the Plaintiff's state law claims.

4. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and under federal law, particularly 28 U.S.C. Sections 1331, 1343, 2201 2202 and 42 U.S.C. Sections 1981, 1983 and 1988.

5. This action also arises under Article I, Sections 3 and 4 of the Constitution of the State of Alabama.

6. Venue in this action is proper in the Southern Division of the Northern District of Alabama under 28 U.S.C. Section 1391(b) because the plaintiffs and defendants reside in the Southern Division of the Northern District of Alabama,

2

and because a substantial part of the events and/or omissions giving rise to plaintiffs' claims occurred in the Southern Division of the Northern District of Alabama.

## PARTIES

7.  Plaintiff, William Jackson, is a member of Local Lodge No.: 2122 of the United Steelworkers of America, affiliated with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC.  Plaintiff resides in the City of McCalla, County of Jefferson and State of Alabama.

8.  Defendant, Local Union No.: 2122 of the United Steelworkers of America, affiliated with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC, herein referred to as defendant union, is and at all times relevant to this action, has been an unincorporated association maintaining its' principal office in Birmingham, Jefferson county, Alabama, within the jurisdiction of the court.

9.  Defendant, District 9 of the United Steelworkers of America, affiliated with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLCand Aerospace Workers, herein referred to as defendant union, is and at all times relevant to this action, has been an unincorporated

3

association maintaining its' principal office in Irondale, Jefferson County, Alabama, within the jurisdiction of the court

10. Defendant, United Steelworkers of America, affiliated with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC, herein referred to as defendant union, is and at all times relevant to this action, has been an unincorporated association maintaining its' principal office in Pittsburgh, Philadelphia, within the jurisdiction of the court

11. The defendant, Danny Perry, resides in the State of Alabama, and is a member of Local Lodge No.: 2122 of the United Steelworkers of America, affiliated with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC. Plaintiff resides in the City of McCalla, County of Jefferson and State of Alabama.

12. The defendant, Robert Irwin, , resides in the State of Alabama, and is a member of Local Lodge No.: 2122 of the United Steelworkers of America, affiliated with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC.

13. The defendant, Walter Evans, , resides in the State of Alabama, and is a member of Local Lodge No.: 2122 of the United Steelworkers of America, affiliated with the United Steel, Paper and Forestry, Rubber,

4

Manufacturing, Energy, Allied Industrial and Service Workers

International Union, AFL-CIO-CLC.

15.   Defendant union is, and at all times relevant to this action, has been a

legal union chartered by and subordinate to the United Steelworkers of

America, affiliated with the United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers

International Union, AFL-CIO-CLC, its' present labor organization

engaged in an industry affecting commerce within the meaning of Section

3(i) and 3(j) of the LMRDA (29 U.S.C. §§ 402 (i) and (j)).

16.   Defendant union, purporting to act in accordance with the provisions of

the constitution of the international union governing local unions, held

and conducted union elections.  This election was subject to the provisions

of Title IV of the LMRDA (29 U.S.C. §§ 481 et seq.)

## COMMON FACTS

17. On or about April 10, 2006, the Local Union No.2122 of the United
    Steelworkers of America, affiliated with the United Steel, Paper and
    Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service
    Workers International Union, AFL-CIO-CLC held their union election
    for officers, grievance committeeman and grievance chairperson. The
    election results were posted on April 11 2006 by the Election
    Committee of Local 2122.

18. According to the election results, the plaintiff, William Jackson, had
    been elected the chairperson of the Grievance Committee for Local
    2122. From said point on, the defendants disputed that William
    Jackson was the rightful winner of the chairman position, and sought
    to change the Union Election Rules and procedures to prevent the
    plaintiff from serving as the Chairperson of the Grievance Committee.

19. The defendants tried to force the Election Committee of Local 2122 to
    change the results of the election, and make Gene Cardin the winner of
    the chairman position.   The Election Committee refused to change the
    election results because William Jackson had won the Grievance
    Chairman position in accordance with the Union's Bylaws,
    Constitution, Election Rules, Past Election Procedures and the
    Collective Bargaining Agreement.

20.     The Election Committee was approached several times by the defendants in
        an effort to get the election results charged. In fact, Raymond League (staff
        representative), Stan Johnson (assistant director) and Steve Knox (training
        coordinator) made two unsuccessful attempts to coerce the Election
        Committee to change the election results. During these attempts, the
        defendants explicitly indicated to some union members that they wanted an all
        white Grievance Committee.

21.     When the Election Committee refused to change the election result of the
        Grievance Chairman person, the defendants tried to get the President of Local
        2122 to withhold his approval of the election results. The President refused to
        do so. As a result, the defendants asked for his resignation.

22.     According to the local union bylaws and past practices, a person must
        win the grievance position in his zone or department, before he can
        hold the Grievance Chairman position. Mr. Cardin did not win the
        grievance position in his zone or department. Hence, he was not
        eligible to hold the Grievance Chairman position.

23.     The Grievance Chairman position is one of the highest positions in the union,
        aside from the President and Vice President positions.

24.     At the union meeting on May 2006, Gene Cardin allegedly filed an appeal
        disputing his loss in the election of the Grievance Chairman. At the same
        meeting, the plaintiff was declared the winner of the Grievance Chairman
        position, in accordance with the election manual, constitution and bylaws.

25.     Gene Cardin works as a Planner at the Steel Plant, and was a member on the
        Local 2122. The Planner position is a supervisory position.

26.     The plaintiff held the Grievance Chairman position from June 2006 until
        August 2006. In August 2006, he was illegally removed by the Executive
        Board, and locked out of the local union offices. Afterward, the Executive
        Board illegally appointed Gene Cardin the Grievance Chairman.

27.     On or about July 28, 2006, members of the International Commission
        conducted an investigation, and concluded that William Jackson should be
        reinstated as the Grievance Chairman. However, the local union refused to
        reinstate Mr. Jackson. On or around November 2, 2006, a bias International
        Executive Board of Appeals panel reversed the decision of the International
        Commissions, and found that Gene Cardin should be declared the winner of
        the Grievance Chairman position in violation of its bylaws, constitution,
        election rules, and the Collective Bargaining Agreement.

28.     The International Executive Board of Appeals' decision went against the
        Union's Bylaws, Constitutions, Election Rules, Past Election Practices and the
        Collective Bargaining Agreement.

29.     Local Union 2122 has operated pursuant its 1961 bylaws for 45 years. After
        plaintiff, an African-American, was elected Grievance Chairman, the
        International Union has taken the position that it does not have any bylaws on
        record for Local 2122.

30.     More specifically, the International Union held that Local 2122 had no bylaws
        on records with International Union at the time of election.

31.     After the plaintiff was illegally and wrongfully removed as Grievance

        Chairman, the defendant started making false representation to other union

        members about the plaintiff to justify the Union discriminatory action. The

        defendants told other union members an union investigation revealed that the

        plaintiff had stolen money from the union.

## CAUSES OF ACTION:

### COUNT I:
### VIOLATION OF §101 OF THE LABOR-MANAGEMENT
### REPORTING AND DISCLOSURE ACT

31.     The plaintiff incorporates by reference all prior allegations as if set out

        herein.

32.     The collective bargaining agreement entered into between the defendants

        and United States Steel Corporation covers the plaintiff.

33.     The local union had an election to elect the Grievance Committee

        members and Grievance Chairman. The election was to be performed in

        accordance with past election practices, bylaws, regulations and

        constitutions of the defendants. The plaintiff was declared the winner of

        his Grievance Zone position and Grievance Chairman position by the

        Election Committee of the Local Union.

34.     In or about August, 2006, the defendants illegally removed the plaintiff

        that he was not the Grievance Chairman. The defendants illegally

        changed the election procedures after the election for the Grievance

Committeemen and Chairmanship, after an African-American was elected Grievance Chairman. The International Union of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC affirmed the illegal action of the Local Union in November of 2006, when it declared that Gene Cardin was the winner of the Grievance Chairman person, and summarily increased the number of members on the Grievance Committee in violation of the Collective Bargaining Agreement.

35.     According to past elections practices and Local Union Bylaws, a person could not serve as Grievance Chairman, unless he is elected to the Grievance committee position for his Zone or Departmental. The election procedural had not been changed by the time of the election in question. Moreover, under the collective bargaining agreement, the number of members of the Grievance Committee cannot change without an agreement between the Union and the Company. There has been no such agreement entered into by the Union and the Company.

36.     The Standard Bylaws for Local Union of the United Steelworkers of America, affiliated with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC provides that "proposed additions or amendment to additions must be submitted in writing and read at two consecutive Local meetings, and passed by a two-thirds (2/3) majority

vote of the membership present at the next regular meeting. The subject

matter of such additions or amendments to additions must be advertised

to the membership through bulletin board or other medium prior to the

meeting at which the vote thereon is to be taken. Such additions and

amendments to additions shall become effective only after approval by

the International Union." Even if the Local Union tried to change the

method of electing the Grievance Chairman, the defendants did not follow

this procedure in trying to change the method of electing the Grievance

Chairman.

37.     The defendant union  violated plaintiff's equal rights under §§ 101, 401

and 402 of the Labor-Management Reporting and Disclosure Act

("LMRDA"), 29 U.S.C. § 411, and plaintiff's rights to  an equal, fair,

informed and meaningful vote on the Grievance Chairman position by,

inter alla:

- a. changing the election procedurals for electing the Grievance
     Chairman Position after plaintiff had been elected Grievance
     Chairman;
- b. changing the election procedurals for electing the Grievance
     Chairman Position after the election of the Grievance Chairman
     failure to prevent an African-American from holding the
     position of Grievance Chairman;

c.  engaging in action to force the plaintiff to resign his Grievance
    Committee position in an attempt to maintain an all white
    grievance committee;

d.  refusing to give the plaintiff the benefits, duties and
    responsibility of the Grievance committee position for his Zone
    or Departmental Grievance Chairman;

e.  refusing to give the plaintiff the benefits, duties and
    responsibility of the Grievance Committee Chairman;

f.  failing to follow the accurate procedural for electing the
    Grievance Chairman Position;

g.  failure to give the plaintiff an opportunity to vote on the
    Grievance Chairman Position;

h.  failure to accurately and adequately explain the Grievance
    Chairman Position;

i.  failing to conduct the election  in  accordance with  the by-laws
    of Local Lodge No.: 2122 of  ;

j.  failing to give the union members notice and an opportunity to
    vote on the Grievance Chairman Position.

k.  refusing to allow plaintiff, an African-American, from holding
    the Grievance Chairman position, while allowing similarly
    situated white person to hold the Grievance Chairman person

12

l.   Refusing to comply with the terms of the Constitution and

bylaws and Collective Bargaining Agreement,

38.   If the defendants had not committed the aforementioned violations, the

plaintiff would be serving as the Grievance Committee  Chairman.

39.   Plaintiff has exhausted internal union remedies to the extent required by

law.

## COUNT II:
## VIOLATION OF § 301 OF THE LMRA:
### (Breach of Union's Duty of Fair Representation)

40.   Plaintiff reaffirms and incorporates  by reference paragraphs 1 through 31

as if set out herein.

41.   The Constitution of the Local Lodge No.: 2122 of the United Steelworkers

of America, affiliated with the United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers

International Union, AFL-CIO-CLC provides that all CBA agreements

between the negotiation arm of the union and the employer must be

approved by the union members.

42.   Article 4 of the collective bargaining agreement, entitled "Non-

Discrimination", provides that the provisions of the [Collective

Bargaining]  Agreements shall be applied to all Employees without

regards to: (a) race, color, religious creed, national origin, disability,

veterans disability or status as a veteran; or (b) sex or age, except where

sex or age is a bona fide occupational qualification; or (c) citizenship or

immigration status, except as permitted by law. Furthermore, Article5,

Section I, paragraph 5(a) provides that the number of members of the

Committee at each Plant shall be agreed upon by the Plant Manager or

his/her designee and the Local Union President/Unit Chair, but in no

case shall there be less than three (3) nor more than ten (10) members, in

addition to the Grievance Chair and Secretary.

43.     As alleged above, the defendants alleged that the method of electing the

Grievance Chairman was at the union meeting prior to the election, when

a motion was allegedly made by the Local Union President to change the

method of electing the Grievance Committee Chairman, and approved by

a majority vote of the union members at said meeting.  Plaintiff alleges

that the said vote did not take place, and that the defendants have

changed the number of members on the Grievance Committee in violation

of their constitution and the collective bargaining agreement.

44.     Plaintiff protested the union above-referenced action by filing a claim with

the union. The union refused to hear the claim. More specifically, the

union told the plaintiff that there was no use to hear the claim because the

union already had determined that Gene Cardin was the Grievance

Chairman.

45.     Plaintiff alleges the fact to be that defendant union, in breach of its'

statutory duty of fair representation owing to plaintiff under the

provisions of the act, fraudulently and illegally removed him from the

Grievance Chairman position, and fraudulently and illegally changed the

procedure for electing the Grievance Chairman after the plaintiff, an

African-American was elected to the Grievance Chairman Position.   The

defendant used the fraudulently and illegally changed election procedures

to remove plaintiff from his position as Grievance Chairman.   The

defendant took this action without the approval of union members and

company in violation of the bylaws and constitution of the union and

without just cause, therefore; the defendants' actions were arbitrary,

carried on in bad faith, and discriminatory.

46.    The defendant union refusal to allow the plaintiff to serve as Grievance

       Chairman was an exercise of bad faith, arbitrary and discriminatory.

47.    As a result of the defendants' refusal to allow an African-American to

       hold the Grievance Chairman position, the defendants violated the

       plaintiff's rights under the collective bargaining agreement, union's

       bylaws and union's constitution, and breached the union's duty of fair

       representation, owing to plaintiff and other union members, as alleged

       above, plaintiff has suffered grievous and extensive damages as follows:

       union benefits, loss of wages, past and future, and other recoverable

       damages.

48.    Plaintiff desires to be reinstated to his elective position of Grievance

       Chairman.

## COUNT III:

## WRONGFUL DISCHARGE FROM UNION OFFICE RESULTING FROM EXERCISE OF RIGHTS OF FREEDOM OF SPEECH AND ASSEMBLY PROTECTED BY LMRDA

49.    Plaintiff reaffirms and incorporates by reference paragraphs 1 through 31 as if set out herein.

50     In or about August of 2006, and for some time prior to that time, plaintiff was the duly elected Grievance Chairman of Local Union No. 2122 of the United Steelworkers of America, affiliated with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC. After plaintiff was elected as Grievance Chairman, the defendants attempted to force the Election Committee to change the election result, so Gene Cardin could be declared the winner of the Grievance Chairman position. The Election Committee refused to illegally change the outcome of the election.

51.    On or about August, 2006, the defendants removed plaintiff from plaintiff's duly elected office in violation of the Bylaws, Election Rules and Constitution of the Labor Union, without providing plaintiff with fair representation, without giving plaintiff time to prepare a defense, and without providing plaintiff with a full and fair hearing as required by 29 U.S.C.A. §§411(a)(5) and 529.

16

52. The defendants wanted an all white Grievance Committee, and especially did not want a black person serving on the Grievance Committee, especially did not want a black person serving as the Chairman of the Grievance Committee. The true reasons for plaintiff's removal from office were because of plaintiff's race in violation of 29 U.S.C.A. §411(a)(2).

53. Plaintiff has spent over four (4) months exhausting internal procedures to correct this unlawful discipline and removal from office to no avail as required by 29 U.S.C.A. §411(a)(4), thus conferring jurisdiction on this Court under 29 U.S.C.A. §412.

54. As a direct and proximate cause of this unlawful discipline and removal, plaintiff has suffered lost salary and fringe benefits plaintiff otherwise would have earned as the duly elected Grievance Chairman of Local Union 2122.

55. Defendant's actions were wanton, willful, and in reckless disregard of plaintiff's rights under the Act in that:

a. Defendant knew that such summary removals were unlawful under the Act and has had ample opportunity to correct their impetuous acts but refused to do so;

b. Defendant knew that plaintiff had an absolute right under the Act to be free from racial discrimination and to serve as an officer and/or representative of the Union;

17

c. Defendant knew that refusing to give the plaintiff the benefits, duties and responsibility of the Grievance committee position for his Zone or Departmental and/or refusing to give the plaintiff the benefits, duties and responsibility of the Grievance Chairman because of his race violated the Act;

d. Defendant has intentionally and knowingly tried to preserve an all white Grievance Committee, by circumventing plaintiff election to Grievance committee position for his Zone or Departmental and/or Grievance Chairman;

e. Defendant sought to use plaintiff as an example to other minorities who might want to hold an office in the union; and

f. Defendants engaged in acts in derogation of democratic procedures guaranteed by defendant's own constitution and ritual, as well as the Act under 29 U.S.C.A. §463. Plaintiff is thus entitled to punitive damages from defendant.

56. Plaintiff has been required to retain the services of an attorney to protect his rights under the Act and therefore is entitled to reasonable attorney fees.

## COUNT IV:
### (TITLE VII, CIVIL RIGHTS ACT OF 1964, AS AMENDED; 42 U.S.C. §2000e et seq.)

57.    The plaintiff incorporates by reference paragraphs "1" through "31" as if
       fully set out herein.

58.    The defendants removed the plaintiff from Grievance Committee
       Chairman office because he is black or an African-American. The
       Defendants did not remove similarly situated white union members
       elected as to Grievance Committee Chairman office.

59.    The plaintiff was further removed from his Grievance Chairman position,
       because of his race.   In fact, the defendants have implored a policy and
       practice of preventing black employees from holding a position on the
       Grievance Committee.

60.    The defendants have not terminated similarly situated white employees
       because of the color of their skin.

61.    The removal of plaintiff from the Grievance Chairman position because of
       his race violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e
       et seq. and 42 U.S.C. §1981.

62.    The defendants discriminated against the plaintiff because his race, with
       respect to the terms and conditions of her employment, by removing him
       from his elective union position, and have thereby intentionally engaged
       in unlawful race discrimination practices prohibited by the Civil Rights
       Act of 1964, (as amended), 42 U.S.C. § 1981 (as amended) and 42 U.S.C. §
       2000(e)-2(a).

63.     The defendants have discriminated against the plaintiff by removing him
        from his elective union position, and refusing to process the plaintiff's
        grievances, and have thereby intentionally engaged in unlawful
        discriminatory practices prohibited by the Civil Rights Act of 1964, (as
        amended), 42 U.S.C. § 1981 (as amended) and 42 U.S.C. § 2000(e)-2(a).

64.     As a result of the foregoing discrimination, the plaintiff has been removed
        from his Grievance Chairman position and has been denied the benefits,
        duties and responsibilities of his Grievance committee position for his
        Zone or Departmental; has not been allowed to file any grievance; has
        suffered humiliation and embarrassment as a result of his removal and
        denial to allow him effectively serve as the Grievance committee person
        for his Zone or Departmental; has suffered, and will continue to suffer,
        lost wages and fringe benefits as an employee and member of the Union;
        and has suffered other compensatory and punitive damages to be proven
        at trial.

### COUNT V:
### (RETALIATION)

65.     The plaintiff incorporates by reference paragraphs "1" through "31" as if
        fully set out herein

66.     The plaintiff was removed from the Grievance Chairman position in
        which he was elected by the union members. Additionally, he has not
        been allowed to serve as the Grievance committee person for his Zone or
        Departmental.

67.     After he was removed and was not allowed to perform his duties as a

        member of the Grievance Committee, he complained and wrote letter to

        the local, district and international office of the union that he was being

        removed from his elective union position in violations of the union's rule,

        bylaws and constitution.

68.     Afterward, the Union started to retaliate against the defendant by refusing

        to file grievance on his behalf, and refusing to allow him to file any

        grievances. He was also lock out of the Union hall. When he complained

        at the union meeting, he was told that he could do his business on the

        hood of his truck, while other grievance official have access to the officers

        at the Union Hall. The defendant has retaliated also by refusing to bestow

        upon plaintiff the benefits and rights given to all other Grievance persons

        by the Collective Bargaining Agreement, Constitutions, Bylaws, Rules,

        Regulations and Past Practices of the defendants.

69.     The defendants' purported reason for its action is pretextual. Moreover,

        the removal of plaintiff was in violation of the union own rules,

        regulations and past practices.

70.     As a result of the foregoing deprivations and retaliation, plaintiff has

        essentially been denied the benefits and rights to serve on the Local Union

        Grievance Committee, has suffered humiliation and embarrassment as a

        result of said denial; has suffered, and will continue to suffer, lost wages

and fringe benefits as a member of the Grievance Committee, and has
suffered other compensation and punitive damages to be proven at trial.

71.     The defendants' action are in bad faith, discriminatory, arbitrary and
        capricious, and constitute retaliation in violation of the Fourteenth
        Amendment of the United States Constitution and 42 U.S.C. §1981 and
        Title VII. The defendant has engaged in said actions in an attempt to
        preserve an all white Grievance Committee.

72.     The retaliation and discrimination practices of defendants violate 42
        U.S.C. §§1981 and 2000e et seq.

73.     Because of the unconstitutional actions of defendants, plaintiff has
        suffered irreparable injuries, and has no adequate remedy at law.

## COUNT VI:
## (42 U. S. C. §1981 CLAIM)

74.     The plaintiff incorporates by reference paragraphs 1 through 31 as if fully
        set out herein.

75.     William Jackson was removed as Grievance Chairman, because of his race.
        He was removed in violation of the Collective Bargaining Agreement,
        rules, regulations, customs, polices and practices of the defendants.

76.     The defendants' actions denied William Jackson of his rights to equal
        protection and treatment under the law of the United States of America, in
        that the practices by defendants establish a class of persons composed of
        minorities being denied the rights to hold office in the local union,

without any reasonable basis therefore, and in the absence of any compelling business or other interest requiring same.

77. The arbitrary and capricious election practices of defendants described above denies to plaintiff, and all other persons similarly situated, their right to hold elective office in a public labor union in violation of 42 U.S.C. §§1981, in that defendants' practices was arbitrary, in bad faith, and discriminate against plaintiff, on the basis of race in seeking, obtaining and maintaining an all white Grievance Committee.

78. As a result of the foregoing deprivations, plaintiff has been removed from the Grievance Chairman position and has been denied the benefits, duties and responsibilities of his Grievance committee position for his Zone or Department, has suffered humiliation and embarrassment as a result of the defendants' discriminatory actions, and has suffered humiliation and embarrassment as a result of being denied access to Union's offices; has suffered, and will continue to suffer, lost wages and fringe benefits as an officer or employee of the Union; and has suffered other compensation and punitive damages to be proven at trial.

79. Because of the unconstitutional actions of defendants, plaintiff is suffering irreparable injuries, and has no adequate remedy at law.

## COUNT VII:
## SLANDER AND LIBEL

81. Plaintiff incorporates by reference paragraphs 1 through 31 as if set out herein.

82    Plaintiff is a member of the Union, and is the grievance person for his

zone and/or department.  As the grievance person, he has super seniority

on the job, and is paid by the union for his services.

83.   Plaintiff has enjoyed the goodwill and good reputation with his co-worker

and fellow union members. The success of plaintiff in a union election and

in performing his business as grievance person depends directly on the

plaintiff's good reputation and goodwill among his with his co-worker

and fellow union members.  Plaintiff fully enjoyed such good reputation

and goodwill until the time of the defamatory statements mentioned

below.

84.   After plaintiff was illegally removed as Grievance Chairman, defendant

Danny Perry, falsely and maliciously claimed to plaintiff's co-workers that

plaintiff was investigated for stealing money from the union, and that the

union's investigation concluded that plaintiff had stole money from the

union.

85.   Defendant, Danny Perry, further made the false statement to some white

union members that plaintiff would not file the grievance or complaints of

the white union members, and had, in fact, refused to file grievances of

white union members.

86.   By making these knowingly false statements, the defendants sought to

imply, and did imply, to the union members that plaintiff was unfit to

hold an elected union position, and could not legally and rightfully hold

an elected union position. The individual defendants was acting to
further the goals of the defendants of ensuring an all white Grievance
Committee. The defendants made these statements in an attempt to have
plaintiff removed a member of the Grievance Committee.

87.    Plaintiff was never notified, nor was a complaint ever filed with plaintiff
       by any organization or governmental agency, of any unfair or otherwise
       improper labor practice by plaintiff. The statements contained in
       defendant's advertisement were reasonably intended to, and did, affect
       and damage plaintiff's goodwill and reputation for the conduct of union
       business. The statements about plaintiff were false. Such statements were
       maliciously intended to, and did, injure and damage plaintiff's reputation
       and goodwill.

88.    The defendants knew that the intended effect of the statements were that
       plaintiff's reputation would be ruined, damaged, and otherwise injured,
       that plaintiff's co-worker would be discouraged and plaintiff's ability to
       get elected to a union office would be reduced, and that plaintiff would
       suffer direct pecuniary loss. Moreover, the defendants want to get
       plaintiff removed as a member of the Grievance Committee.

89.    All the defendants knew that the statements were, and are, malicious and
       false, and that they were intended to destroy, and otherwise impair,
       injure, and affect plaintiff's reputation and good will; and in fact the

statements did destroy, reduce, impair, injure, and affect plaintiff's reputation.

90. Immediately following making of the statements, and as a result of such publication, some of plaintiff's fellow union members signed a petition to have him removed as their grievance person.

**WHEREFORE, PREMISES CONSIDERED,** the plaintiff requests

judgment against defendants for:

1. Award general damages in those amounts as proved at time of trial;

2. Award plaintiff punitive damages in the sum of $5,000,000;

3. Award plaintiff reasonable attorney fees and costs;

4. Special damages for pecuniary loss according to proof;

5. judgment declaring the removal of plaintiff as Grievance Chairman to be null and void;

6. A permanent injunction be issued by this court directing defendants to cancel and explunge the action of changing election procedures without approval of union members and/or without complying with the Union's rules and regulations;

7. Defendants be permanently restrained and enjoined from interfering or changing the provisions of the approved and agreed upon collective bargaining agreement without approval of union members.

8. Damages be assessed against defendants and in favor of plaintiff for loss of wages, injury to reputation, humiliation, suffering and mental anguish and the expenses of clearing himself against the allegations wrongfully made against him, including attorney's fees in the sum of $5,000,000.

9. Plaintiff be awarded costs of suit; and plaintiff be granted such other further relief as

the court deems fair and equitable within these premises.

Respectfully submitted,

Roderick Graham   (GRA007)
Attorney for Plaintiff
Post Office Box 43334
Birmingham, Alabama 35237
(205) 427-9494